Thank you, Your Honor. May it please the Court, James Holtz on behalf of Appellant. This appeal arises from Appellant's anti-slap motions to two complaints by Travelers involving 18 underlying construction defect actions. Travelers' complaints are pure slap suits intended to silence Appellants and punish them from seeking to participate in ongoing litigation. If allowed, the complaints will have a profound chilling effect on Appellant's right to petition. They are precisely the kind of abusive litigation that the appellant can't afford. You have to keep your voice up, sir. You have to keep your voice up. Sure. I apologize. They are precisely the kind of abusive litigation that the anti-slap statute was intended to address. In this case, Appellant's ---- Pardon me. Could you enlighten me? Perhaps I'm not following as closely as I could. But as I understand anti-slap motions, a key element in anti-slap motions is the public interest, right? Yes. Here we have KB Home. I suppose that's some construct of Kauffman and Broad Homes that's saying that it is ---- it should not accept the attorneys which Travelers is attempting to foist on it. And it should not be forced to tender defense of some claims to insurers other than Travelers, and that it should seek indemnity and contribution and other equitable subrogation remedies from other persons. And what I see here is KB saying it doesn't want to cooperate with its insurance carrier for whatever reasons, and the reasons are not made too clear. But none of those reasons seem to affect the public interest. Why did you bring an anti-slap motion? Well, Your Honor, case law is very clear that any litigation has a public interest per se. Oh, if I don't pay my dry cleaner and he sues me, then if I cross-complain because he ruined one of my suits, he can move to strike my cross-claim because it has a public interest? No. But if you sue him and then he sues you back because you sued, that would have a public interest per se. Any compulsory cross-complaint and any compulsory cross-claim is a subject of an anti-slap motion? Is that your position? Absolutely not, Your Honor. I better not be. If a second cause of action arises from your activities in furtherance of your right to petition, that rises. But if your right to petition is a garden variety contract right, then any counterclaim that seeks to quell your recovery is a protected activity under slap? If the slap suit arises from your petitioning activity. Well, of course, they all arise from petitioning activity because that's what a counterclaim is. And the Supreme Court, our Supreme Court in Navalier, made this very clear, that if a garden variety breach of contract cause of action arises from petitioning activity, that suit is subject to anti-slap. That doesn't mean that the plaintiff can't sue on that action. It just means that that cause of action is subject to early dismissal if plaintiff You mentioned a case and I'm all ears. Okay. Navalier. Say again? Navalier. Navalier. Can you spell that? Yes. And I'll give you the citation in just a second. Counsel, I'll help you. It's 29 Cal 4th, 82, 2002. Thank you very much, Your Honor. You're welcome. Garden variety causes of action can attack defendant's right to petition. And the Supreme Court in Navalier made that distinction very clear. I'll read that case with great interest. Thank you. So in this case, and if I could just go through the facts a little bit because how you summarize the case is generally accurate. Tell me what the petitioning activity was. Appellant hired attorneys to defend 18 construction defect causes of action. Travelers came in and said, replace those counsel with my two counsel. Under the terms of a contract that gives them the right to designate the lawyers who will defend the case once a claim is tendered to them. Excellent point, Your Honor. And I'm very glad you brought that up because it gives me a chance to highlight the case law that says those two things that we're talking about are two distinct and separate analysis under the anti-slot statute. First, you analyze the activity. Then, aside from any justification or motivation whatsoever, look at the activity. Does that arise from petitioning activity? Well, but we're looking at what travelers did under the contract in the context of an anti-slap motion to ask ourselves whether or not travelers essentially has a legitimate justification on which they're likely to prevail. Exactly. And they've got a contractual provision that says they can do that, do they not? Arguably. But that's problem two. Yeah. So you had asked me what's the petitioning activity. Right. That's a prompt one analysis. Okay. I'm highlighting that for you. Okay. What the motivation was, what the contractual right was, were they justified? That's all part of prompt two. Okay. I understand the distinction. You have to keep those things very clear. Okay. So the petitioning activity is the decision by KB Holmes to choose their own lawyers to defend the claim. Correct. So they hired their counsel. Travelers comes in and says replace them with my counsel. Travelers, or KB says no. According to travelers, we say no. So the question is, is KB's decision not to replace his counsel any act in furtherance of a petitioning activity? Well, you're defining petitioning activity as being petitioning activity. That's not helping me understand what petitioning activity is in this contract. Okay. I'm getting there, Your Honor. Maybe I'm going around about waves, so I'll make it clear. Hiring defense counsel, selecting defense counsel is petitioning activity under the Zaniska v. Campbell case. There's also a case. I'm having a hard time making the link between KB Holmes' desire to choose its own lawyers and a petition to whom? It's not to the court. It's a decision that KB wants to make as to who will speak for it, I guess. And it's not directed to the legislature. It's not directed to government of any sort. It's directed to a judicial body. In this context, you could replace litigation with petitioning activity. Synonymous in this context. They're the same thing. Ongoing litigation is petitioning activity. But we're back to Judge Bea's question. Is it all litigation activity? So every time a lawsuit is filed, it's fair game for a slap action? And Navalier is very clear on this. If the cause of action arises from petitioning activity, i.e., the lawsuit, it is subject to the anti-slap statute. However. But now you're equating all lawsuits with petitioning activity, and I don't read Navalier that broadly. I think the case is very clear. The court says that doesn't mean the plaintiff can't sue on that activity. It only means that that cause of action is subject to early dismissal if the plaintiff can't substantiate a claim. Well, and we're here on the dismissal, right? That's your appeal. Correct. Okay. So maybe we should move to prong two. Okay. Before I do that, there's the other activity at issue. It's not only KB's election of counsel, which under Tuzaniska is clearly defined as a communication in connection with ongoing litigation, protected activity. There's also Travelers' alleged direction to appellants to pursue recovery, seek recovery, seek contribution. According to Travelers, KB again said no, and Travelers asserts that that constitutes a breach of the cooperation clause under certain clauses. That's another provision of the contract, right? Or is that a duty that arises in insurance law, that the insured has a duty to cooperate in good faith with the insured? There's a cooperation clause. What Travelers asserts that means is disputed, but under Travelers' theory of events, that's a breach of the cooperation clause in all the policies at issue here. Okay. So a direction, a refusal to take direction to seek contribution, seek recovery, or enforce rights is a communication in connection with ongoing litigation, which again is protected activity. A communication with or to whom? Any party that is interested in the litigation. Well, at this point, the only parties we have are Travelers and KB Homes. And as I understand what Travelers asked, it asked the insured or the additional insured, I guess, to tender the defense of these claims and perhaps bring some cross claims for contribution or indemnification to spread the risk or the potential exposure to others. Let me, I misspoke. Let me state that reading directly from the case. A statement or writing is in connection with litigation if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation. Travelers is undeniably a person that has interest in the litigation. They directed, allegedly directed appellants to do, to take action in the litigation. Appellant's response to that is a protected litigation, a protected communication under the ambit of litigation. So every time that an insurance company directs its insured to take action, which it can't take because only the insured can cross complain for contribution and indemnity, et cetera. Every time that happens, boy, that's an anti-slapsuit. No. Why? What's the difference? If the insurance company sues that person for making that decision, for making that communication in connection with ongoing litigation, that is protected activity. What's the difference? But that's not why they sued them. They sued them in order to seek a declaratory judgment as to what the rights and obligations of the insured were under the terms of the insurance contract. There's two causes of action, Your Honor. Breach of contract. Yes. Yes. Yeah. They're suing appellant for refusing their direction. Right. And they're seeking a declaration. Declaration. That they breached the contract. And how else can travelers get a resolution of that dispute other than bringing that kind of action? Going back to Navalier, they could sue me for what I'm saying right here, and there would be no dispute that what I'm doing here is petitioning activity. I could bring an anti-slap. You're not answering my question. I'm trying. My question is how else is the insurer to obtain a judicial declaration of its rights and obligations under the policy if it doesn't bring such a lawsuit, given your client's, I don't mean this in a pejorative sense, but I guess it is pejorative, recalcitrance in the face of travelers' demands and offer of counsel. Your Honor, and that's where I was going. Because travelers can sue. So it's a legitimate lawsuit, right? Travelers can bring a debt relief cause of action. However, it has to be legitimate. The only reason. Well, what's illegitimate about it? There's no contract. There's no damage. There's no insurance contract. Travelers did not produce any admissible evidence that there are contracts between travelers and any of the appellants. Is your position that you are wrongfully joined in the case because you're not an additional insured under the insurance policies of the parties that were sued? My position. Let's take an example. The Cabinet Company, which I understand apparently has some problems with the way they install cabinet work, or at least that's what the homeowners are saying. And as I understand it, the reason that KB Homes is here is because before it hired the cabinet maker as the subcontractor, it required the subcontractor to have adequate insurance and to name KB Homes as an additional insurer. So you're not taking the position that there's no contract of insurance, are you? I'm taking the position that Travelers has failed to satisfy its burden under which any of the appellants are in a contract with Travelers. Well, I thought it was your client who insisted on the requirement that before you could be a subcontractor to KB Homes, you had to have adequate insurance and name us as an additional insurer. That happens on every single project. Ninety percent of the time, there is no insurance. They say, yeah, here's your certificate. We're insured. Well, then why did KB Homes notify Travelers that there was a claim against it? KB Homes appellants, some of them, tendered to over 100 insurers. How many insurers defended or agreed to defend? One. Eighty-nine percent of them, sorry, all the remainder of them said, we don't have insurance. You're not insured. Just because we tender, we tender to everybody. And the one company that said, yes, there's insurance, we'll accept the tender, we'll provide counsel, you sue. They didn't come in and say, we'll provide counsel. They said, get rid of the counsel that you have, that you selected. We're selecting your counsel. And we said, are there any conflicts? Is this counsel confident? No, I understand why you're reluctant, but that's a separate issue. I'm still hung up on whether or not you acknowledge that there's even a contracted issue here that needs a declaratory judgment. My position is that Travelers had the burden to establish a contract and they have not done so. Do you deny the existence of a contract? I have not. That's not my burden. If I wanted to sue Travelers, I would have the burden of establishing a contract. On what basis did you tender the claim to Travelers? Based on a certificate of insurance that KB and all appellants get on hundreds of basis. A certificate of insurance that establishes the existence of a contract. Otherwise, there's no, otherwise it's meaningless. It's just a piece of paper. And most of the time, in 90% in this case, they were all meaningless piece of paper. Well, apparently not in this case. A certificate is nothing. It's issued by a broker or the insurance company. Well, it's evidence that there is an underlying insurance policy that may or may not cover the claim. I'm really at a loss to understand your legal position. I'm not sure what you're telling us. I'm not the only one. Really, honestly, I am at sea here. Okay. Maybe you need to go back to square one. Okay, you're on. So, prong one, I think we've established the activity that Travelers suing KB for arose from protected activity. And prong two, now it's Travelers' burden to establish contracts. It's suing us for breach of contract. I'm not suing Travelers. They're suing me. They have to establish the existence of a contract, not me. And every time there's a claim of contract, you have an anti-slap motion to knock it down? I mean, they have to establish their contract, and they will or will not. But not every claim, not every declaratory relief action is subject to an anti-slap motion because... We're in prong two. So, we're talking about whether or not Travelers satisfied its obligation under prong two of establishing a probability of prevailing on the merits. They have not done so. In order to do so, they have to establish the basic moments of the claim. And the first element is the existence of the contract. Have they done that? No. Have they established damages? No. Have they established prejudice? No. They cannot prevail on their breach of contract claim because they haven't satisfied any of the elements of their claim. Why don't we do this? You've got about a minute and 43 seconds left. You want to reserve some rebuttal time. Maybe we should hear from Travelers' counsel. Thank you. Good afternoon, Your Honors. May it please the Court. Raymond Brown from Aguilera Law Group for Appellee Travelers' Property Casualty, Company of America. California courts have noted that the arising from standard is not easily met. It does not simply mean that an action was triggered by, filed after, or somehow tangentially related to protected activity. Instead, the standard requires that the principal gravamen of the cause of action was the protected activity. And, in fact, counsel referenced the Navalier case. Well, the California Supreme Court in Navalier specifically said, quote, that a cause of action arguably may have been triggered by protected activity does not entail it is one arising from such, close quote. And that's at page 88. Here, Travelers' complaint alleges two causes of action, breach of contract and declaratory relief against appellant. Travelers' prima facie case for those two causes of action requires an analysis of the contract terms and California law to determine if Travelers had the right to control the defense it provides under the insurance policies it issued, whether appellant refused to accept the counsel appointed by Travelers, and whether under the law and the contracts Travelers is obligated to pay for counsel chosen by appellant. Appellant's attorney selection decision is not a part of Travelers' causes of action. Let me ask you a question. Is there any claim here of the invocation of Section 2860 of the Civil Code requiring an insurer to have private counsel if there's no coverage? And I apologize, Your Honor. My firm and opposing counsel are involved in roughly 100 cases up and down the state that are roughly identical to this. In most of them there is a 2860 demand. I don't recall whether there is in these cases or not. I mean, are any of the claims of the homeowners for punitive damages or for damages in excess of policy limits? No, they are not. Well, okay. As the Court noted, I'm sorry, I got lost in my own notes here. If appellant's argument were accepted, it would essentially mean that every breach of contract or bad faith claim, including those filed by an insured against an insurer in California, would be subject to anti-SLAPP. There's no reason why the insured should be treated differently. But the mere fact that there is underlying litigation that this litigation arises from does not subject it to anti-SLAPP. That's not enough to mean that it arises from protected activity. With regard to the second prong, as the trial court pointed out, even if appellant had met its burden on the first prong, its motions were nevertheless privately denied because appellee travelers demonstrated before the trial court that the cause of actions are supported by facts that would at the very least constitute a prima facie case to support a judgment in travelers' favor. Travelers established that it issued policies, that appellant tendered its defense under those policies, that travelers accepted the tender and appointed counsel, and that appellant rejected such counsel. The fact that appellant in these proceedings seems to be in favor of appellant would be saying that maybe there were no policies. I don't really understand either. It seems disingenuous to me. The ---- I mean, did the ---- I assume you allege the existence of a contract. Did you actually append a copy of the contract to your declaratory judgment action? No. However, in opposition to the anti-SLAPP motion, we did submit the policies. So the court had before it the actual policies that you claim are operative  Correct, Your Honor. Okay. And then finally, as to the issue of prejudice, here appellants did more than merely refuse to cooperate. They ---- and refused to accept counsel appointed by travelers. They also at the same time still demanded that travelers provide them with a defense and pay the full cost of that defense, including all fees and costs that were incurred by counsel retained by appellant. Did they also demand indemnity besides the defense? Yes, they did, Your Honor. And didn't you request of them that they seek contribution from other potential torch fees? That's exactly right. Do you have any idea why they refused to do so? That just mystifies me. You say you have a hundred of these cases. I'm baffled with the idea that this case will be replicated 99 more times. I literally a week and a half ago finished a trial of six consolidated cases identical to this one in Tulare County. They ---- either they are rejecting our counsel outright, whether it's KB Home or Centex Homes or Standard Pacific, who are all represented by the same counsel that's here. Either they're rejecting counsel appointed by travelers outright or they're saying we're entitled to 2860, despite the fact that there are no allegations of intentional conduct or anything else that would give rise to a right to independent counsel. Are you counsel for travelers? Were you tendered to them? I'm sorry, Your Honor? Was your firm tendered as defense counsel? No. No, we are counsel for travelers. So you don't feel personally rejected? No. Can you answer my question? I mean, through any of these trials or discovery, what's the justification for not agreeing to seek other sources? The ---- I'm speaking given my wealth of knowledge from handling all these cases. Regardless of whether it's Centex Homes or KB or whatever, they want a ---- they have specific firms. They want to represent them, primarily Neumayer & Dillian, although there are a couple of other firms. They insist that travelers pay for those firms. Travelers actually ---- this all started about four years ago when there was a dispute where travelers tried to replace Neumayer & Dillian, and in the course of that dispute, travelers subpoenaed and got some records that showed improper billing by Neumayer & Dillian, and travelers have since sued Neumayer & Dillian for fraud, which is before the Northern District. It's a currently stated action. So is this whole thing driven by lawyers or clients? My belief is that it's completely driven by lawyers. I don't see how the homeowners benefit at all. I'm sorry, the homebuilders. Counsel, you didn't quite answer Judge Solomon's question. You told us about the resistance of KB to the naming of counsel. But what is the purpose of KB in not acceding to the request for seeking contribution and indemnity from other carriers or other sources? To punish travelers. To punish travelers. Because they want travelers to pay 100%. They don't want travelers to be able to share that obligation with any other insurers. Does KB have some ownership interests in the other insurers? No. So it's spite, not money? That, I believe, is completely accurate, Your Honor. You might want to address that. I don't have anything further, Your Honor. What was the result of the trial? You mentioned you had a trial last week. We finished the testimonial portion of the trial. It's a bench trial. The court asked for closing briefs instead of closing argument. So closing briefs will be submitted over the next couple of months. And my guess is we probably won't have a ruling until maybe February of next year. And was the equivalent of a summary judgment motion filed in that case? The court specifically instructed us not to file a summary judgment motion. Instead, it wanted a bench trial. Okay. And what bench was that? That was in Visalia and Tulare County, Judge Lloyd Hicks. Oh, state court. Yes, Your Honor. Before you sit down, would you agree that with regard to the three underlying cases, Blackmore, Claudius, and Reed, that those should be dismissed because they're moot given the withdrawal of the tender to travelers? Are you referring to the appeal should be dismissed or the? The appeal. Yeah. In other words, the concern I have is that even if we affirm the district court in the dismissal of the anti-SLAPP motion, as I understand the state of the record at this point, for whatever reason, whether by settlement or something else, the tender has been withdrawn. So travelers is no longer presently facing any responsibility for further defense of those cases. Aren't they moot as far as this motion is concerned? I don't know that that's accurate, Your Honor, because I have not been advised that KB has withdrawn all claim for prior fees. Fees that were incurred during the time when it had rejected counsel appointed by travelers. Okay. Well, if it's not seeking tender, I mean, if it's withdrawn as tender of defense and indemnity, why are you seeking a declaratory relief that they can't do that? Well, no. Your Honor, my concern is there was a tender which we accepted. They claim that from that point we are responsible for the fees incurred by Newmare and Indiana. I got you. Subsequently, they withdrew their tender. But unresolved is whether or not there's any liability for the fees that were incurred prior to the tender. I believe that's accurate, Your Honor. Okay. All right. Thank you, Your Honor. Mr. Holtz, you have some explaining to do. I will try my best and apologize if it wasn't effective before. Before I jump into anything, it's concerning that everything that Travelers has said is taken at face value because, in fact, we haven't refused any demand to seek contribution or indemnity from other insurers. As I've explained, we've actually tendered to hundreds of others insurers. Well, that's what I was going to ask you because I thought you said that in your opening remarks. And that's part of why they don't meet their burden on prong two is because they don't have any evidence of what they say. This whole thing about an Armstrong eviction. Well, let me ask you this. What did your client tender vis-a-vis these hundreds of other insurers? In every single case, whenever a construction defect action is filed against Travelers, if they're involved in a project, they go through their file, they find all these certificates of insurance, and they send out tenders and they say, if I'm uninsured, please defend and indemnify me. Same thing that went to Travelers where we don't say we have a contract, you have a policy, we're insured under your policy. We say, if we do have a policy, if that policy applies, defend and indemnify us. Right. And then did you also then seek to file any claims for contribution? In every single construction defect, every developer, every builder files cross-complaints against every other entity that owes a defense. So is your answer yes, we have done that in every case in which we've been named? I believe so, Your Honor. There's 18 of them. I don't know whether or not we did that in every single case. I can't answer because I don't know the status of each of those cases. But as a rule, as a matter of course, the appellants do so. And, Your Honor, you asked about whether they alleged a contract in the complaint. They did not. Well, was the contract in front of the district court? It sounds like it was. What Travelers did was dump 18 years' worth of policies they issued to a subcontractor on the district court, nothing having to do with any of the appellants. Well, I'm still at a bit of a loss here. There has to be a contract somewhere because you tendered the claim. And there are what purport to be insurance policies that I now understand were offered to the district court below. So Travelers issues policies to the subcontractors. Right. We may or may not be insured under those policies. Wasn't it on the basis of? On the possibility of coverage. That you tendered the claim to Travelers. Yes, on the possibility of. Is there any other contract that would have supported a tender of the claim to Travelers? Like I said, they dumped 18 years' worth of policies on the district court. So you don't know of any others besides the ones that were before the district court. Correct. I'm just trying to understand something, counsel. When this litigation began, you were seeking Travelers to help out and cover some of the legal expenses, correct? Yes, we tendered to. You tendered to them. So you wanted Travelers to come in and help you. Yes. When you wanted them to do it, what was KB's idea as to what the legal obligation was for Travelers to provide that coverage? It's based on a possibility. So to the extent that they cover KB for this loss, we would like them to come in and help, as you said, along with the other insurers who may be defending the case through competent, conflict-free counsel. We'll get to that in a moment. But it was on the basis that there would be some sort of contractual arrangement between KB and Travelers, correct? The possibility of a contract with Travelers. Well, if there was no contract, then Travelers wouldn't owe you anything. Correct. So for this to even get past square one, there would have to be a contract. Not always. A lot of times Travelers and other insurers see that there's a possibility of coverage and they'll pick up. They'll agree to defend, pending their investigation. A lot of times they reserve their right, and Travelers did so in this case and every single case, to seek reimbursement for anything they paid if it turns out that the defendants were not covering for them. All right. So is your position now that you don't want them to cover you in this litigation, or that you do want them to cover you in this litigation? If they have an obligation to defend my client, I want them to defend my client. They have said we've breached the contract to the extent there's a contract. We've breached it. You no longer are entitled to anything from Travelers. That's Travelers' position.  I do not agree there's a contract. But if there's no contract, then why are they obligated to do anything for you? So every insurance company, a lot of them, if there's a possibility. Right. They don't go and confirm, yes, there is a contract. They say there's a possibility of coverage here, so we'll defend based on the possibility. If we're wrong, if our investigation turns out that there is no coverage, that there is no contract, guess what, I'm coming back to you for every penny I ever gave you. That's what they've asserted in this case, even though they've never issued any payment. If you're not willing to acknowledge the existence of the contract, how can you claim protection for protected activity arising out of a contract? Your Honor, so there's prong one, which is protected activity, and that's any communication to any person in connection with ongoing litigation. Even if there's no contract? Even if there's no contract. Now, Travelers asserts we breached the contract by refusing the directive issued by Travelers. So Travelers has the burden to establish the contract. Travelers proffered to the district court contracts and said, these are the clauses that we are relying upon. Apparently, that's what the district court looked at when it granted the motion to strike. I urge... Is that not right? Did the district court not look at the contracts? No, Your Honor. There's no recitation to the contracts in the order. There's no reference to any contract. But I thought your opposing counsel said that the contracts were in front of the district court. Travelers produced its contracts with the subcontractors, not with any of the appellants. Pardon me, counsel. Is your cause of action against Travelers? No. We have no cause of action against Travelers. Travelers is suing the appellants. Travelers is suing the builders. Right. You haven't sued Travelers yet? Yes. Okay. Thanks. And just to be clear, so USF&G, which is an affiliated entity of Travelers, says there is no contract in this case. There is no contract with any of the appellants. Yet they're still suing the appellants in this case. But your position is that you want there to be a contract, so they're obligated to cover you. Not in this case. We've withdrawn our tender. We've withdrawn our tender on the Claudius action, which would have been the USF&G. But not all of them. Not all the cases at issue. It's the USF&G, yes. Okay. But there are still all the other ones that we have before us in this case, right? Correct. So for all of those cases, you still want there to be a contract. And I feel like this is a little bit like Alice in Wonderland here. But I'm trying to understand, you know, your company wants there to be a contract so they will pay legal fees arising out of this litigation, correct? Correct. Okay. And your position now is that there is no contract. My position is that Travelers, when they sue me for breach of contract, they have to establish the existence of the contract. And they haven't done it. What's the basis of your tender then? The basis of the tender is a possibility of a contract. So of the 100 insurers that we tendered to, 99 of them said, you know what, there is no contract. Or they said, you know what, there is a contract with a subcontractor. You're not insured. This contract doesn't apply to you. Or they said, the work at issue isn't covered under this contract, so you're not covered under this contract. So there's a million possibilities why an insurer denies coverage to a potential additional insurer. We tendered to 99 insurers. All of them said no. Did you file a response of pleading to the declaratory relief action? Or did you just move an anti-slap? Anti-slap, yes. That's the only response of pleading you filed? Yes. Why couldn't the district court in this case say that prong two is satisfied, that there's a probability or at least a possibility that a contract exists based on the fact that a tender was made? Again, because it's a possibility, but prong two, the burden of proof is on the plaintiff to establish the elements of its claim. Sure. So it has to show a probability of prevailing on the merits. If there's no contract, they haven't established a probability of prevailing on the breach of contract cause of action. If you have withdrawn your tender as to Blackmore, Claudius, and Reed, is there any remaining dispute between KB Homes and USF&G? No. So you don't have a claim for attorney's fees prior to the period of the tender? Absolutely not. With a withdrawn tender, there's no basis to assert. All right. I mean, with that admission, then — So the record was clear that was absolutely not? Absolutely not. We'll make sure about that. Yeah. Okay. Because we're going to rely on that representation. Yeah. We don't withdraw tenders lightly. We conduct a further analysis. Traveler conducts a further analysis. So you're not making any claim as to those three cases for any cost of defense investigation or any filing fees or anything else against travelers. True? True. All right. So, as I said before, it's a possibility. Travelers conduct further investigation. We conduct further investigation. And if our investigation reveals an absence of any potential for covered damages, we'll withdraw. Or if traveler's investigation reveals we're not insured, there's no covered damage, whatever reason, they'll deny the claim. And it happens a vast majority of the time. Okay. I think we have it as well as we're going to have it. The case as argued is submitted. We'll get you a decision when we can. Thank you. And we'll be adjourned until 9 a.m. tomorrow morning.
judges: Tallman, Bea, Owens